IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WALGREEN CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) |
| | ) |
| AARON PETERS, | ) |
| | ) |
| Defendant. | ) |

**VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff Walgreen Co. d/b/a Walgreens ("Walgreens") files its Verified Complaint for Damages and Injunctive Relief against Aaron Peters ("Peters"), stating as follows:

**I.      INTRODUCTION**

1.      This is an action for injunctive relief, compensatory damages, and attorneys' fees and costs arising out of Peters' misappropriation of Walgreens' proprietary information and theft of computer data.  Peters was a long-time employee of Walgreens and was directly involved in real estate decisions regarding Walgreens locations across the United States.  In this position of trust, he had access to volumes of confidential data regarding all Walgreens locations.  On December 9, 2019, Peters left Walgreens and took a position at L2 Partners, LLC ("L2"), a company that specializes in buying properties that Walgreens leases.  Walgreens recently has determined that, immediately before he left Walgreens' employ to join L2, Peters illegally downloaded an incredibly large amount of Walgreens' confidential and proprietary data to an external hard drive, which, upon information and belief, he took with him when he started working for L2.

1

2. The data Peters stole from Walgreens includes, but is not limited to, almost 30,000 emails (including emails protected by attorney client privilege), spreadsheets with profit and loss statements for every Walgreens location in the United States, and documents describing, in detail, the analysis and decision-making process used by Walgreens in its real estate and other business decisions. Upon information and belief, Peters has since used this confidential and proprietary data with L2 to target Walgreens' stores for purchase and to strategically determine how to prevent Walgreens from exercising its contractual right of first refusal in such transactions. Peters' actions, described herein, constitute a breach of his duty of loyalty to Walgreens, a conversion of Walgreens' property, and a criminal violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") for which Walgreens is entitled to pursue a civil remedy.

## II. THE PARTIES

3. Plaintiff Walgreens is an Illinois Corporation with its principal place of business in Deerfield, Illinois.

4. Defendant Peters resides in this judicial district and may be found at his residence located at 412 E. 14th Street, Lockport, IL 60441.

## III. JURISDICTION AND VENUE

5. Subject-matter jurisdiction of this Complaint is proper pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

6. This Court has supplemental jurisdiction over all of Walgreens' related claims arising under state law pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this Court under 28 U.S.C. § 1391.

## IV. FACTUAL BACKGROUND

8. Walgreens is the leading retail pharmacy across the United States, specializing in providing access to prescription drugs, as well as providing health and wellness products and information, beauty and personal care products, and photo services, consumables and general merchandise.

### A. Peters' Employment with Walgreens

9. Peters began working for Walgreens in 2003, and at the time of his resignation on December 9, 2019, Peters was Senior Director of Walgreens' Market Planning and Research Department ("MPR Dep't"), with an annual salary in the six figures.

10. As Senior Director, Peters helped manage Walgreens' MPR Dep't and was intimately involved in all aspects of Walgreens' market planning and research and in certain of Walgreens' real estate decisions for the entire United States. Walgreens entrusted Peters with access to raw confidential and proprietary data that that Peters could and did use to analyze, track, predict, and make recommendations based on the performance of every Walgreens store nationwide including, without limitation, information concerning sales, lease terms, operations, adjusted operating income and cash flow, as well as sales reports, dashboards, and spreadsheets compiling this data. In 2019, he managed at least twenty (20) Walgreens employees who reported to him.

11. Peters also used this information to advise Walgreens' real estate decisions, including its decision to exercise or waive Walgreens' right of first refusal ("ROFR") to purchase properties if a current landlord sought to sell, a right typically found in Walgreens' property leases. For example, Peters, as Senior Director of Walgreens' MPR Dep't, would review confidential information available to the MPR Dep't and, using certain confidential metrics,

make recommendations in favor of or against Walgreens' exercise of its ROFR. Peters further had the duty and authority to destinate matters as confidential.

12. During multiple employee evaluations, Peters acknowledged that a critical aspect of his job was keeping this information confidential.

13. Walgreens provided Peters with a Walgreens-owned laptop (the "Computer") for his employment, which Peters used to access Walgreens' confidential and proprietary data and communicate concerning Walgreens' marketing decisions and real estate transactions throughout the United States.

14. To safeguard its confidential information, Walgreens adopted multiple policies regarding its employees' access and use of confidential data and information technology.

15. Specifically, Walgreens adopted the "Protection of Confidential Information Policy" on or about April 29, 2010, which provides as follows:

> **Purpose**
>
> . . .
>
> The purpose of this policy is to protect Confidential Information from disclosure or use outside Walgreens or for personal gain, either during or after employment, without proper authorization to do so.
> . . .
>
> **Policy**
>
> Confidential Information [defined to include but not be limited to business plans and strategies, financial data, and research and development] should be used by team members only for legitimate Walgreen business purposes in accordance with contractual and/or legal requirements, and should only be disclosed **within Walgreens** to those team members who have a legitimate business **need to know** such information. . . . Confidential Information should never be used or disclosed for any non-Walgreen business purpose, either during or after your employment with the Company.
>
> . . .

>Violations of this policy regarding Protection of Confidential Information may violate the law and can lead to legal and disciplinary action, including the possibility of immediate termination of employment.

(the "Confidentiality Policy"). (Confidentiality Policy, attached hereto as Exhibit 1.)

16. Additionally, Walgreens has had in place a "Global End User Security Policy" since at least December 10, 2018, which provides in relevant part:

>**3.1 Acceptable use**
>. . .
>WBA [Walgreens Boots Alliance, defined to include Walgreens] information must not be sent or transferred to:
>- unauthorized individuals or organizations,
>- any online storage site which is not an approved WBA storage solution,
>- any personal email accounts.
>
>WBA owned computing devices (such as laptops, desktops, mobile devices), applications (such as business applications, intranet applications, email applications, instant messaging applications), communication systems (such as voice and conferencing), and network resources, (including access to the Internet and other on-line resources), are provided by WBA for the use of its employees and authorized third-parties for business purposes. These systems, devices, applications and networks are the property of WBA and must be used in accordance with WBA policies, professional standards, as well as laws and regulations.
>. . .
>
>**3.5 Device management**
>WBA systems and information may only be accessed by authorized devices, such as:
>- WBA owned desktop and laptop computers or authorized personal laptops/computers,
>- WBA owned telephones,
>- WBA owned or authorized storage media,
>- WBA owned or authorized smart phones and tablets including personal devices authorized by IT Leadership.
>. . .
>In addition, WBA end users leaving the Company must return all WBA owned equipment and electronic and non-electronic data to their line managers.
>. . .
>
>**3.7 Data storage**
>WBA end users must only store WBA information on devices authorized by WBA. The following external storage devices/mechanisms are prohibited without approval from the end user's manager AND IT

5

> Leadership or designee which will only be given for exceptional circumstances:
> - External storage devices such as flash drives and external hard drives;
> - CDs/DVDs;
> - Internal and external websites; or
> - Any other external storage media not listed above.
>
> **3.8 Disclosure of Confidential Information and data transfer**
> WBA end users are prohibited from disclosing, storing, or transmitting Confidential Information to anyone internal or external, who is not authorized to receive the information. Confidential Information is information that WBA has a legal, regulatory or contractual obligation to protect, or, where unauthorized disclosure, compromise, or destruction could result in severe damage, or could have a serious adverse financial and/or reputational impact on WBA, or provide significant advantages to a competitor.
> . . .
> In the event Confidential Information must be shared with external users or third-parties, the sender must validate the following:
> - All recipients are authorized,
> - The data is encrypted during transmission, and
> - A current, executed Non-Disclosure Agreement ("NDA") or appropriate contracts requiring confidentiality maintained with the external users or third-parties is on file.

(the "Security Policy").[1] (Security Policy, attached hereto as Exhibit 2.)

17. Peters reviewed and acknowledged Walgreens' Confidentiality and Security Policies on March 21, 2018 and March 26, 2019.

**B. Peters' Theft of Walgreens' Confidential Information**

18. Upon information and belief, in or about November 2019, Peters accepted an offer of employment with L2.

19. According to information recovered from the Computer, Peters knowingly violated the Confidentiality and Security Policies on multiple occasions before leaving Walgreens.

---

[1] The Security Policy was amended and updated on or about October 4, 2019, but these provisions did not change from the December 2018 version.

6

20. A forensic examination of the Computer establishes that on November 20, 2019 – shortly before he left Walgreens to join L2 – Peters manually archived his Walgreens email file on the Computer (the "Email Archive") and transferred and saved the Email Archive to an unauthorized, personal external drive. (Declaration of John Jorgensen ("Expert Decl."), attached hereto as Exhibit 3, ¶ 14.)

21. The Email Archive contained almost 30,000 emails total, including multiple emails and attachments about Walgreens' real estate transactions and strategy and about the performance of Walgreens' stores, including income and profit data for all Walgreens' stores for fiscal year 2018, as well as emails clearly designated as "confidential" and/or "privileged." (*Id.* ¶ 13.) The following emails are representative of the documents in the Email Archive:

   a. An email with an attached Excel spreadsheet of FY2018 profit and loss data for all Walgreens stores;

   b. An email with an attached list that identifies the top 500 Walgreens stores by FY2018 Adjusted Operating Income;

   c. An email with an attached FY2019 profit and loss data, including sales, profits, and payroll and other expenses, for 6 (six) Walgreens stores in advance of an executive tour;

   d. An email labeled "time sensitive" and with an attached form for approval of the exercise of a right of first refusal;

   e. An email with an attached PowerPoint presentation about the exercise of a right of first refusal; and

   f. An email labeled "PRIVILEGED AND CONFIDENTIAL" with an attached spreadsheet of store data.

(*Id.* and Exs. B-G.)

22. Peters also knowingly violated Walgreens' Security and Confidentiality Policies on December 5, 2019, when he once again downloaded and accessed on his unauthorized, personal external drive certain documents regarding Walgreens' internal processes, analyses, and decisions in connection with its acquisition of certain stores from a competitor ("Acquisition Information") (the Email Archive and Acquisition Information may hereinafter be collectively referred to as the "Illegally Obtained Data"). (*Id.* ¶¶ 11, 16.)

23. Peters failed to return the Illegally Obtained Data before leaving Walgreens, further violating Walgreens' Security and Confidentiality Policies.

24. Nothing in Peters' employment with Walgreens would require him to download the Illegally Obtained Data, let alone to do so on an unauthorized, personal external drive, or to fail to return the same after his departure.

25. Upon information and belief, Peters downloaded the Illegally Obtained Data with the intent of giving himself, and/or L2, an improper competitive advantage through unlawful use of the Illegally Obtained Data.

26. Upon information and belief, Peters subsequently disclosed the Illegally Obtained Data to L2, which was not authorized to receive the same.

**C. L2/Peters' Attempt to Circumvent Walgreens' ROFR**

27. Walgreens began to suspect that Peters violated Walgreens' Confidentiality and Security Policies after L2 began targeting Walgreens' high-performing stores for purchase through offers that were seemingly designed to circumvent the terms of Walgreens' ROFR at those locations.

28. L2's campaign against Walgreens appears to have been precipitated by Walgreens' refusal to partner with L2 in a series of real estate transactions L2 proposed to Walgreens in June 2020.

29. In or about September 2020, L2 began a campaign, upon information and belief, using the Illegally Obtained Data disclosed to L2 by Peters, designed to purchase properties where Walgreens had high-performing stores by making offers to purchase these properties with unjustifiably higher than market purchase prices, signing sale agreements prior to the offers being presented to Walgreens and setting closing dates that would fall immediately after Walgreens' ROFR period.

30. As part of this campaign, L2 and Peters advertised through brokers, Marcus & Millichap, that based on their "experience" with Walgreens, they "pay the absolute highest and best price the market will bear; without triggering a ROFR." (Marcus & Millichap February 3, 2021 Email, attached hereto as Exhibit 4.)

31. Upon information and belief L2's exploited the Illegally Obtained Data it received from Peters to design offers to prevent Walgreens from being able to exercise its ROFR, with the goal of enhancing L2's portfolio at Walgreens' expense.

32. The precision of L2's campaign suggested L2 had direct knowledge of Walgreens' high-performing stores, the terms of its ROFRs, and other confidential information about Walgreens' real estate decisions. That information was not publicly available but was contained in the Illegally Obtained Data.

33. Based on L2's apparent knowledge of Walgreens' confidential information, Walgreens suspected that Peters accessed and disclosed Walgreens' confidential and proprietary information to L2.

34. Walgreens hired a forensic computer expert to examine the Computer, incurring costs in excess of $5,000, and that expert discovered the above-described violations of Walgreens' Confidentiality and Security Policies.

35. On May 6, 2021, Walgreens demanded that Peters immediately return the Illegally Obtained Data. (Declaration of David M. Pernini ("Pernini Decl."), attached hereto as Exhibit 5.) As of this filing, Peters has refused to comply. (*Id.* ¶ 4.)

V. **CAUSES OF ACTION**

**COUNT ONE**
**BREACH OF THE DUTY OF LOYALTY**

36. Walgreens realleges each of the allegations in the foregoing paragraphs of this Complaint as if set forth herein.

37. Walgreens placed Peters in a position of trust and confidence by providing him with access to Walgreens' confidential and proprietary information which is not known or accessible outside of Walgreens.

38. Peters accepted this position of trust and confidence and promised to act in Walgreens' best interest by, among other things, agreeing not to use or disclose Walgreens' confidential and proprietary information for anyone else's benefit.

39. Peters abused Walgreens' trust, failed to act in Walgreens' best interests, and breached his duty of loyalty and fiduciary duties to Walgreens by, including without limitation: (a) downloading the Illegally Obtained Data onto an unauthorized, personal external drive; and (b), upon information and belief, disclosing the Illegally Obtained Data to L2, which was not authorized to receive that information.

40. As a direct and proximate result of Peters' breach of his duty of loyalty, Walgreens has suffered damages in an amount to be determined at trial. Walgreens is entitled to

injunctive relief against Peters to recover all property misappropriated and to prevent future loss and damages, plus court costs, and attorney's fees.

## COUNT TWO
## VIOLATION OF CFAA, 18 U.S.C. § 1030

41. Walgreens realleges each of the allegations in the foregoing paragraphs of this Complaint as if set forth herein.

42. The CFAA, 18 U.S.C. § 1030, imposes criminal and/or civil liability upon any person who, *inter alia*: (a) intentionally accesses a protected computer and obtains information therein without authorization (or exceeding authorization); or (b) intentionally accesses a protected computer without authorization (or exceeding authorization), thereby causing damage or loss.

43. Peters intentionally accessed, without Walgreens' authority, Walgreens' protected Computer and misappropriated the Illegally Obtained Data stored and/or accessible thereon by, including and without limitation, copying and/or downloading the Illegally Obtained Data onto an external drive.

44. Peters exceeded any authorized access to Walgreens' protected Computer by, without limitation, downloading and saving onto an external drive the Email Archive and multiple documents regarding a planned acquisition of certain stores from a competitor of Walgreens onto an external drive.

45. Peters' actions were in violation of Walgreens' policies regarding the use of its work computers, which directed that the information contained thereon was confidential and which prohibited employees from downloading that information onto an external storage device.

46. As such, Peters intentionally accessed a protected computer and acted without authorization or exceeded his authorized access in order to obtain information from the Computer in violation of 18 U.S.C. § 1030(a)(2)(C).

47. As a result of Peters' actions, Walgreens suffered damages greater than $5,000 by incurring attorneys' fees and costs in responding to the violation and by conducting a damage assessment, which included a forensic examination of the Computer. Walgreens is entitled to injunctive relief against Peters to recover all property misappropriated and to prevent future loss and damages, as determined by the finder of fact, plus profits, court costs, and attorney's fees.

## COUNT THREE
## CONVERSION

48. Walgreens realleges each of the allegations in the foregoing paragraphs of this Complaint as if set forth herein.

49. The Illegally Obtained Data was the product of Walgreens' commercial operations, specifically its market and store performance analysis and its real estate transactions throughout the United States, and is Walgreens' property. Walgreens has the legal right to immediate and sole possession of the Illegally Obtained Data.

50. Peters obtained Walgreens' property – namely, the Illegally Obtained Data – by copying and/or downloading the same onto an external drive with the intent to deprive Walgreens of the same, in violation of Walgreens' internal policies and without its consent. Such actions constitute conversion under Illinois law.

51. Peters is currently in possession of the Illegally Obtained Data.

52. Walgreens made a demand for Peters to return the Illegally Obtained Property, but Peters has refused to do so.

53. Peters' conversion of Walgreens' property directly and proximately caused and continues to cause Walgreens damage in an amount to be determined. Walgreens is entitled to injunctive relief against Peters to recover all property converted and prevent future loss and damages, as determined by the finder of fact, plus profits, court costs, and attorney's fees.

## COUNT FOUR
## REPLEVIN

54. Walgreens realleges each of the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

55. Through deceitful means, Peters acquired possession of the Illegally Obtained Data by downloading the same onto an unauthorized, personal external drive.

56. Walgreens is the owner of the Illegally Obtained Data and is lawfully entitled to possession of the same.

57. Despite Walgreens' demand, as of the date of this filing, Peters has yet to return the Illegally Obtained Data.

58. Walgreens has a superior right to possession of the Illegally Obtained Data, and Peters is wrongfully detaining the same. Peters has not taken the Illegally Obtained Data for any tax, assessment, or fine levied by virtue of any law, against the property of Walgreens. Peters has not seized the Illegally Obtained Data under any lawful process against the goods and chattels of Walgreens. Nor has Peters held the Illegally Obtained Data by virtue of any order for replevin against Walgreens.

59. Accordingly, Walgreens seeks an order pursuant to 735 Ill. Comp. Stat. Ann. 5/19-104 that the Illegally Obtained Data be seized and returned to Walgreens.

## COUNT FIVE
## INJUNCTIVE RELIEF

60. Walgreens realleges each of the allegations in the foregoing paragraphs of this Complaint as if set forth herein.

61. Walgreens has valid, enforceable rights based on Peters' violation of the CFAA and Peters' fiduciary obligations to Walgreens.

62. Peters continues to maintain possession of the Illegally Obtained Data and, upon information and belief, continues to use such information to the detriment of Walgreens.

63. Peters' conduct is causing irreparable harm to Walgreens by, among other things, upon information and belief, allowing L2 access to the Illegally Obtained Data, which upon information and belief, L2 uses the same to improperly interfere with Walgreens' landlord/lessee relationships.

64. Peters' conduct is of a continuing nature and will continue to harm Walgreens unless enjoined by the Court.

65. Walgreens has no adequate remedy at law and is therefore entitled to a preliminary and permanent injunction enjoining Peters from further violations of the law.

## DEMAND FOR JURY TRIAL

66. Walgreens demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Walgreens respectfully requests this Court to:

a. Issue a preliminary and permanent injunction and/or Order of Replevin, compelling Peters to return the Illegally Obtained Data and any copies thereof to Walgreens, by delivering them to Walgreens' counsel of record;

b. Issue an order requiring Peters to sit for a deposition within five days after returning the Illegally Obtained Data for the limited purpose of determining what use Peters has

made of the Illegally Obtained Data and the identity of all persons or entities to whom Peters has disclosed or provided copies of the Illegally Obtained Data, and that such deposition will not count toward the 1-day limitation for deponents contained in Rule 30(d)(1) of the Federal Rules of Civil Procedure;

      c.      Award Walgreens a judgment against Peters in the amount to be proven at trial;

      d.      Award Walgreens pre-judgment and post-judgment interest as permitted by any applicable law; and

      e.      Award Walgreens such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

        /s/ *Susan Valentine*
Susan Valentine (Ill. ARDC # 6196269)
Valentine Austriaco & Bueschel, P.C.
105 West Adams Street, 35th Floor
Chicago, IL 60603
Telephone: (312) 288-8285
Facsimile: (312) 638-8137

Joseph D. Wargo, *pro hac* application pending
David M. Pernini, *pro hac* application pending
WARGO & FRENCH LLP
999 Peachtree Street, NE, 26th Floor
Atlanta, Georgia 30308
Telephone: (404) 853-1575
Facsimile: (404) 853-1501

*Counsel for Plaintiff Walgreen Co.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| WALGREEN CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) |
| | ) |
| AARON PETERS, | ) |
| | ) |
| Defendant. | ) |

## VERIFICATION OF DAVID MILLER

1. I, David Miller, am Divisional Vice President of Walgreen Co.'s Market Planning and Research Dep't. I am over the age of eighteen (18) and am competent in all respects to testify to the matters set forth herein.

2. I have read the contents of Walgreen Co.'s Verified Complaint For Damages And Injunctive Relief (the "Complaint").

3. Based on my personal knowledge as a Walgreen Co. employee and information contained in the Affidavit of John Jorgensen attached to the Complaint as Exhibit 3, I verify that the factual statements contained in Paragraphs 1 through 2 and 8 through 26 of the Complaint, and Exhibits 1 and 2, referenced therein, are true and accurate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of May, 2021

/s/ _David K. Miller_
David Miller