THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WALGREENS CO. ) | |
| ) | No. 21 C 2522 |
| Plaintiff, ) | |
| ) | Judge Jorge L. Alonso |
| v. ) | |
| ) | |
| AARON PETERS, ) | |
| ) | |
| Defendant. ) | |

## Memorandum Opinion and Order

Plaintiff Walgreens Co. alleges that Defendant Aaron Peters, a former employee of nearly 16 years, illegally and against company policy downloaded confidential and proprietary information onto a personal external hard drive when he left Walgreens' employ to join a competitor. Walgreens now seeks to have that data returned. Before the Court is Walgreens' motion for a preliminary injunction and replevin, which asks this Court: (1) to enjoin Peters and his new employer, L2 Partners LLC ("L2"), from using this data; and (2) to turn over possession of the hard drive and Peters' L2 laptop to Walgreens. For the reasons stated below, the Court grants in part and denies in part Walgreens' motion for preliminary injunction and replevin [5].

## Background

The following facts are taken from the parties' briefs and exhibits.[1] Walgreens is a leading retail pharmacy across the United States, providing access to prescription drugs as well as other health and wellness products, beauty and personal care products, photo services,

---

[1] The Court offered the parties the opportunity to conduct an evidentiary hearing on Walgreens' preliminary injunction motion. Both parties declined a formal hearing and agreed to have this matter resolved on the papers. Because the briefs adequately address the issues presented, the Court does not require a formal evidentiary hearing to resolve Walgreens' preliminary injunction motion.

consumables and general merchandise. Peters started working for Walgreens in 2003 and continued working there until December 2019. When he resigned, Peters worked as the Senior Director of Walgreens' Planning and Research Department. His responsibilities included overseeing market planning and research and participating in Walgreens' real estate decisions throughout the United States. To perform this job, Walgreens provided Peters with access to data that Walgreens contends is confidential. Peters used the data to analyze, track, and predict the performance of every Walgreens brick-and-mortar store nationwide. This information included sales figures, lease terms, operations, adjusted operating income, cash flow, sales reports, dashboards, and various spreadsheets. Peters used this information to advise Walgreens on various real estate decisions, including whether to exercise Walgreens' right of first refusal—a right typically included in Walgreens' property leases—to purchase a property if a current landlord wanted to sell.

Before his exit in December 2019, Peters manually archived his Walgreens email file on his computer and transferred this file to a personal external hard drive. This data included approximately 30,000 emails, some with attachments. The information spanned a wide variety of topics including Walgreens' real estate transactions and strategy, performance of stores, income and profit data for all Walgreens' stores for the fiscal year 2018, and other information marked "confidential" and/or "privileged." Walgreens suspected that Peters had taken information with him when his new employer, L2, started targeting Walgreens' high-performing stores for purchase. To investigate, Walgreens hired a forensic examiner who confirmed that Peters downloaded certain emails and information before he left. Walgreens initiated a legal action against L2 in the Chancery Court of Tennessee, seeking to stop the sale of a property to L2 due to an alleged violation of Walgreens' right of first refusal. *See Walgreens Co. v. L2 Partners*,

*LLC et al*, Case No. 21-CV-502358.

Walgreens then filed suit here against Peters, the sole defendant in this case. In its Amended Complaint, Walgreens asserts the following state and federal claims: (1) breach of the fiduciary duty of loyalty, (2) misappropriation of trade secrets per the Defend Trade Secrets Act, 18 U.S.C. § 1836, (3) conversion. As relief, Walgreens seeks replevin and an injunction. Walgreens has filed a motion for preliminary injunction [5], seeking to have the hard drive turned over to it in order to investigate whether any copies or other information was taken, and an order enjoining Peters and L2, or anyone acting in concert with Peters, from using this data. Peters objects to the request for an injunction.

## Discussion

Walgreens asks the Court to issue an order of replevin, ordering Peters to turn over the external hard drive to Walgreens, and an injunction prohibiting Peters and L2 from further using or disclosing the data Peters took. The Court will address the replevin request first and then the preliminary injunction request.[2]

**I.    Replevin**

Illinois law provides that "[w]henever any goods or chattels have been wrongfully distrained, or otherwise wrongfully taken or are wrongfully detained, an action of replevin may be brought for the recovery of such goods or chattels, by the owner or person entitled to their possession." 735 ILCS 5/19-10. To establish a claim for replevin, Walgreens must prove that: (1) it is the relevant property's owner or lawfully entitled to its possession; (2) that the property is wrongfully detained by the defendant (after the defendant has refused a demand to surrender the

---

[2] The Court declines the parties' invitation to strike certain supplemental briefs or to not consider certain arguments. The Court will consider all arguments raised by the parties in the briefing to date.

property); and (3) that the property is not subject to any state tax, assessment, or fine. 735 ILCS 5/19–104; *First Illini Bank v. Wittek Indus., Inc.*, 261 Ill. App. 3d 969, 970 (Ill. App. Ct. 1994).

Walgreens argues that it has demonstrated a strong likelihood of success on its replevin claim, because (1) Peters took data that belongs to it; (2) the data came from Walgreens' servers and was connected with Peters' Walgreens email account; (3) Walgreens' security and confidential information policies required the return of any this information when Peters left; and (4) the data was not taken in connection with any tax, assessment or fine. Peters opposes the motion, arguing that intangible electronically stored data cannot be subject to a replevin action.

The Court must first resolve whether Walgreens can maintain a replevin claim for intangible items, which, in this case, is the digital data Peters took. To start, the Court notes that case law regarding what types of property are subject to a replevin action is limited. Fortunately, precedent often discusses replevin hand-in-hand with the tort of conversion. *See, e.g.*, *Priddle v. Malanis*, Case No. 12-cv-5831, 2016 WL 8094590, at *10 (N.D. Ill. 2016); *Directtv, Inc. v. Patel*, Case No. 03-cv-3442, 2003 WL 22682443, at *2 (N.D. Ill. 2003) ("Conversion in Illinois is 'based on the common law tort of trover, which originated as a remedy against the finder of lost goods who refused to return them.' 'The basis of the tort was considered to be an interference with possession of a chattel, or with the right to immediate possession'") (internal citation omitted). Therefore, this Court will do the same.

With this framework in mind, the Court addresses whether intangible property can be the subject of a replevin action. The Illinois Supreme Court has held that an action for conversion, and thus by extension replevin, lies only for personal property that is tangible or at least represented by or connected with something tangible. *See In re Thebus*, 108 Ill. 2d 255, 260 (1985). Courts have grappled with whether intangible property can be subject to an action for

conversion or replevin, and Illinois appellate courts have issued conflicting statements on the subject. *Compare Bilut v. Northwestern Univ.*, 296 Ill. App. 3d 42, 692 N.E.2d 1327, 1334 (1998) ("Our supreme court has stated that an action for conversion lies only for personal property that is tangible or at least represented by or connected with something tangible.") (citing *Thebus*, 91 Ill. Dec. 623), *with Stathis v. Geldermann, Inc.*, 295 Ill. App. 3d 844, 692 N.E.2d 798, 807 (1998) ("In this State, however, parties may recover for conversion of intangible assets"). Indeed, federal courts in this district are split on this issue. *See Joe Hand Promotions, Inc. v. Lynch*, 822 F. Supp. 2d 803, 807 n.3 & n.4 (N.D. Ill. 2011) (compiling cases).

More recent cases call into question whether Illinois law recognizes conversion or replevin claims for intangible property. In *The Film and Tape Works, Inc. v. Junetwenty Films, Inc.*, for example, the First District Appellate Court cast doubt on whether Illinois Courts continued to expand claims like conversion to cover intangible property. 368 Ill. App. 3d 462, 856 N.E.2d 612, 624 (1st Dist. 2006). The court in that case wrote: "intangible property rights cannot be the subject of conversion unless they are merged into a tangible document over which the alleged tortfeasor exercised dominion or ownership." *Id.* Additionally, the Seventh Circuit in *Am. Nat'l Ins. Co. v. Citibank, N.A.*, stated that Illinois does not recognize a claim for conversion of intangible rights—in that case it was an interest in certain funds—but did not discuss intangible property. 543 F.3d 907, 910 (7th Cir. 2008).

Although the Court recognizes the split on this issue, the Court is bound by the Seventh Circuit's direction in *Am. Nat'l Ins. Co.* What's more, other courts similarly conclude that Illinois law does not recognize a claim for conversion of intangible property—although these cases cite to an unpublished state appellate court decision holding that digital information on a USB drive cannot be the subject of a trespass to chattels claim. *See Dino Publishing LLC v.*

5

*Maritimo Marketing Americas, Inc.*, Case No. 19-cv-1921, 2019 WL 3857875, at *3 (N.D. Ill. 2019) (citing *Ogbolumani v. Young*, 2015 IL App (1st) 141930-U, ¶ 33, 2015 WL 1284064 ("However, as the trial court noted and defendants point out, there is no recognized cause of action in Illinois for a trespass to chattel claim based on trespass to an intangible such as digital information contained on a USB drive")); *Sheridan v. iHeartMedia, Inc.*, 255 F. Supp. 3d 767, 780-81 (N.D. Ill. 2017) (same).

But even if Walgreens could pursue a claim of replevin based on intangible property, it has not established that it is the proper owner of the external hard drive or the L2 laptop. Rather, it established that it owns some of the information contained on the hard drive. To be sure, Walgreens' point that it is the owner of at least some, if not most, of the information on the hard drive is well-taken. But other remedies provided for by this order should adequately protect Walgreens' interests in not having this information widely disseminated. If Walgreens had purchased the hard drive for Peters, it would have a better argument. As it stands, Walgreens has presented no evidence that the hard drive itself belongs to it. Therefore, because Walgreens has not established superior ownership over the physical external hard drive, the request for a replevin order is denied.

**II.     Preliminary Injunction**

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). To obtain a preliminary injunction, Walgreens must demonstrate: (1) its case has some likelihood of success on the merits; (2) it has no adequate remedy at law; and (3) it will suffer irreparable harm if the injunction is not granted. *Courthouse News Service v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). If these conditions are met, the Court must then consider the

irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing the harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Lastly, the Court must consider the public interest in denying or granting the injunction. *Id.*

When weighing these factors, the Court applies a "sliding scale" approach, meaning that "the more likely plaintiff will succeed on the merits, the less the balance of irreparable harms need favor plaintiff's position." *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). "The sliding scale approach is not mathematical in nature, rather 'it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief.'" *Id.* at 895–96 (internal citations omitted). A preliminary injunction acts to maintain the status quo pending a final hearing on the case's merits. *Doeskin Products v. United Paper Co.*, 195 F.2d 356, 358 (7th Cir. 1952).

Before turning to the arguments regarding whether injunctive relief is warranted, the Court addresses two preliminary matters. First, Walgreens confirms that it does not seek a preliminary injunction under its newly added Defend Trade Secrets Act. The Court accepts that representation and therefore confines its analysis to the replevin (addressed above) and breach of fiduciary duty claims. Second, the Court finds that the amended complaint does not moot the preliminary injunction motion, as Peters argues. Regardless of the status of any former or newly added claims, Walgreens moves under its breach of fiduciary duty and replevin counts, both of which remain in Walgreens' amended complaint. Therefore, the Court will consider the preliminary injunction motion's merits. Having resolved these preliminary matters, the Court now considers whether a preliminary injunction is warranted in this case.

### A. Likelihood to Succeed on the Merits

Before the Court can issue an injunctive order, Walgreens must make a strong showing

that it is likely to succeed on the merits. *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). A possibility of success is not enough, and neither is a "better than negligible" chance. *Id.* A "strong" showing, however, doesn't mean proof by a preponderance. *Id.* at 763. A preponderance standard, as the Seventh Circuit explains, "would spill too far into the ultimate merits for something designed to protect both the parties and the process while the case is pending." *Id.* Again, the ultimate purpose of a preliminary injunction is to preserve the status quo until a trier of fact resolves the case on the merits. *Doeskin Products*, 195 F.2d at 358.

A claim for breach of fiduciary duty requires proof of the following elements: (1) a fiduciary relationship existed, (2) breach of that duty, and (3) that breach proximately caused the injury of which the party complains. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶69 (2012). In the employment context, employees owe a duty of loyalty to their employer. *Id.* As such, although employees "may plan, form and outfit a competing corporation" before leaving a company, they cannot compete with their employer until after they leave the company. *Cooper Linse Hallman Capital Mgmt., Inc. v. Hallman*, 368 Ill. App. 3d 353, 357 (Ill. App. Ct. 2006); *Lawlor*, 2012 IL 112530, ¶69 ("[A] fiduciary cannot act inconsistently with his agency or trust and cannot solicit his employer's customers for himself").

To start, the Court finds that the Illinois Trade Secrets Act (hereafter "ITSA") does not preempt Walgreens' fiduciary duty claim as Peters argues. The ITSA's section 8 states that the "Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of [Illinois][] providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8. It does not, however, affect other civil remedies that are not based on misappropriation of a trade secret. *Id.*

The Court agrees with Walgreens that *Hecny Transp., Inc. v. Chu* controls. 430 F.3d 402

(7th Cir. 2005). In *Hecny*, the Seventh Circuit held that the ITSA did not preempt a fiduciary duty claim based on the defendant's taking of a non-confidential customer list. *Id.* at 405. The Seventh Circuit predicted that the Illinois Supreme Court would follow the dominant view on preemption under the Uniform Trade Secrets Act of 1985, which states "that claims are foreclosed only when they rest on the conduct that is said to misappropriate trade secrets." *Id.* at 404-05 (collecting cases). Preemption, therefore, "does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information...." *Id.* at 405 (internal citation omitted).

      Walgreens concedes that at least some of the information Peters took did not constitute trade secrets, and thus the ITSA does not preempt the fiduciary duty claim because it is not premised entirely on misappropriating trade secrets. As the Seventh Circuit said in *Hecny*, "[a]n assertion of trade secret in a customer list does not wipe out claims of theft, fraud, and breach of the duty of loyalty that would be sound even if the customer list were a public record." *Id.* at 405. So too here. Even if some of the information Peters took formed a trade secret, that does not automatically eliminate other common law claims based on Peters' taking non-confidential information. What's more, Walgreens demonstrates that Peters' continued to access Walgreens' information even after he left its employ, further distinguishing this case from the cases cited by Peters. *See Bankers Life & Cas. Co. v. Miller*, No. 14 CV 3165, 2015 WL 515965, at *8 (N.D. Ill. Feb. 6, 2015) (finding that breach of fiduciary claim was not preempted by ITSA when the allegation was based on "more than the mere taking of trade secrets," including inducing employees to quit as part of scheme to compete and continued using improperly acquired information once they began competing).

      Having determined that the ITSA does not preempt Walgreens' fiduciary duty claim, the

9

Court turns to the claim's merits. Here, Walgreens sufficiently establishes a likelihood of success on its fiduciary duty claim. Before he resigned, Walgreens employed Peters as a Senior Director responsible for overseeing 20 employees, paid him a six-figure salary, and allowed him access to sensitive and confidential information. On his last day of employment, Peters downloaded a host of data from Walgreens and took that data to L2. Peters and his new employer used this information to target high performing Walgreens' stores and purchased nearly $80,000,000 worth of Walgreens' leased properties after Peters joined L2. In addition, Peters accessed Walgreens' information through an online portal approximately 50 times after he resigned. These facts show that Walgreens has a likelihood of success on the merits because they suggest Peters owed a fiduciary duty of loyalty to Walgreens, that he breached that duty when he took Walgreens' data, and that Peters' actions proximately caused injury to Walgreens.

### B. Irreparable Injury

The Court next considers whether the absence of a preliminary injunction would result in irreparable harm. "A potential injury is irreparable when 'the threatened harm would impair the court's ability to grant an effective remedy.'" *EnVerne, Inc. v. Unger Meat Co.*, 779 F. Supp. 2d 840, 844 (N.D. Ill. 2011) (internal citations omitted). "[P]otential harm is generally not 'irreparable' if the party seeking an injunction has an adequate alternative remedy in the form of money damages or other relief. Conversely, an injury that is not easily measurable in monetary terms, such as an injury to reputation or goodwill, is often viewed as irreparable." *Id.*

Considering the various types and amount of information Peters took, the Court agrees that it is difficult to determine the costs of Walgreen's data. Moreover, it is difficult to determine the value of Peter's (or L2's) use of this information. As such, because the harm here is not easily measured, the Court finds the harm irreparable.

Peters, on the other hand, contends that Walgreens cannot show irreparable harm because (1) he has already agreed not to use, access or disclose this data; (2) there are no allegations of a pending sale; (3) Walgreens always has the option to exercise its right of first refusal on any property that L2 offers to purchase; and (4) the data is now outdated. First, the Court does not find persuasive Peters' argument that there is no threat of harm because he informally agreed to take no action on this data. The Court agrees that Walgreens need not accept Peters' assurances that he will not use or disclose this information. Without a preliminary injunction, Peters could change his mind at any point, and if that occurred Walgreens would have limited recourse because the damage would already be done.

Second, there does not need to be a threat of a pending sale to find irreparable harm. The party moving for a preliminary injunction need only show a likelihood of irreparable absent an injunction. *See Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 803 (N.D. Ill. 2011). And in this case, Walgreens has met that burden. Indeed, it appears that L2 has already acted, at least to some degree, based on this information, which served as the impetus for Walgreens' lawsuit in Tennessee against L2. Peters also incorporated this information into research decks that he prepared for L2's investors.

Third, the fact that Walgreens may have the option to exercise a right of first refusal for any of its leased property does not diminish the threat of irreparable harm from the data's use and disclosure. Even if Walgreens has a right of first refusal for these properties, and can block some of these purchases, that does not prevent the misuse of its confidential data. The information can still be improperly used to target specific stores, which is why Walgreens seeks this preliminary injunction.

Fourth, the argument that the Walgreens Data is now outdated is also unconvincing.

11

Defendant has not demonstrated how the data is stale. What's more, while some of the information may be public, at least some of the information is not. Indeed, L2's corporate representative acknowledged that at least some of the Walgreens' data was not publicly available. It is not a stretch to imagine that profits are a significant factor when deciding whether to target a particular Walgreens' store for purchase. This information, while potentially calculable with some effort, is not widely disseminated. In short, the Court finds that Walgreens faces irreparable harm without an injunction.

### C. Balance of Hardships

The Court also balances the harms between imposing an injunction on Peters and the absence of an injunction for Walgreens. The balance here clearly favors Walgreens. Peters already agrees to a limited form of injunction that prohibits him from using or disclosing the information he downloaded. Thus, an injunction will not harm Peters by prohibiting him from using information that does not belong to him. Walgreens, on the other hand, would be harmed if the data is used against it and released to its competitors.

What's more, although the Court is not ordering Peters to turn over the hard drive to Walgreens for the reasons articulated in the replevin section above, Walgreens will be given the opportunity to inspect the physical hard drive and allow their expert to inspect it as well. The Magistrate Court, to whom this Court has referred discovery, can address any issues such as the time, place, or other details if the parties cannot reach an agreement themselves.

### D. Public Interest

Lastly, the Court should balance any effects that granting or denying the preliminary injunction would have on non-parties, a factor some courts refer to as "the wild card that is the 'public interest.'" *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir. 1986).

Here, the non-parties are the public and, most likely, Peters new employer: L2. While the preliminary injunction imposed here may have some ramifications on L2's actions going forward or other individuals who received the information Peters took, those ramifications are minor when weighed against the benefit of maintaining the status quo until all of Walgreens' claims are resolved. Accordingly, the Court finds that the public interest is not sufficiently harmed by imposing a preliminary injunction to warrant denial of Walgreens' motion.

### III.     The Injunction's Scope

Finally, the Court takes a moment to address the scope of this preliminary injunction. Walgreens asks the Court specifically to enjoin both Peters and L2 (a non-party). In support, Walgreens points to Rule 65(d)(2) of the Federal Rules of Civil Procedure as authority for the Court binding L2. Peters, in opposition, argues that the Court should not address this preliminary injunction to L2 in any manner because it is not a party to this litigation and have not been given an opportunity to present evidence in its defense. In support, Peters cites to *Lake Shore Asset Mgmt. Ltd. v. Commodity Futures Trading Com'n*, 511 F.3d 762, 766 (7th Cir. 2007).

With respect to the Court's authority to bind non-parties in a preliminary injunction order, Rule 65(d) states, in pertinent part: "[t]he order binds only the following who receive actual notice of it by personal service or otherwise…the parties…and other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." Thus, the Court's order can bind any person that acts in concert with a party bound by an injunction. The Seventh Circuit's decision in *Lake Shore* doesn't alter this rule. To be sure, *Lake Shore* supports the proposition that a litigant must serve a non-party with process and give it an opportunity to present evidence before any enforcement action is taken against it. *Lake Shore Asset Mgmt. Ltd.*, 511 F.3d at 767. But it also makes clear that other entities may act in concert with an enjoined

13

entity, and those entities do so at their own peril. *Id.* Therefore, because Peters is the only party-defendant, this order specifically binds him by name as well as, more generally, any individual or entity acting in active concert or participation with him. Finally, with respect to Walgreens' request to order L2 to identify which individuals or entities they provided the Walgreens' Data to, that is a matter for discovery, which was referred to the Magistrate Judge.

## Conclusion

For all these reasons, the Court denies Walgreens' request for an order of replevin. Walgreens' motion [5] for a preliminary injunction is granted in part and denied in part. Defendant Peters is enjoined as set forth in the accompanying preliminary injunction order.

**SO ORDERED.**                                      **ENTERED: July 28, 2021**

_____
**HON. JORGE ALONSO**
**United States District Judge**